Chad Stegman, California Department of Justice for Defendants Appellants I'd like to reserve 5 minutes in rebuttal. The lower court erred in adjoining California Assembly Bill 51 on the basis of FAA preemption. There is no arbitration agreement even at issue here, which is cause for concern. The Supreme Court has not issued a decision in the absence of an agreement anchoring the litigation. And because AB 51 focuses on employer practices without affecting the enforceability of arbitration agreements, it's unlikely that an agreement would ever be the center of a preemption challenge to AB 51. Second, not every law or rule that touches on arbitration is subject to the FAA and preemption. There's no express or field preemption under the FAA. There's implied or obstacle preemption. Courts cannot assume preemption when the word arbitration is mentioned. They've got to look more closely at state laws to determine whether under the specific circumstances there's a conflict with the FAA and whether the law creates an obstacle to the accomplishment of the inherent attributes of arbitration. AB 51 does neither. In fact, it complements the FAA. The Supreme Court recognized again last year that the first principle of the FAA is that arbitration is strictly a matter of consent. Which brings me to Labor Code Section 432.6b, which states, An employer shall not threaten, retaliate, or discriminate against or terminate any applicant for employment or employee because of their refusal to consent to the waiver of any right form or procedure under the Labor Code or the Fair Housing and Employment Act. If the first principle of the FAA is that arbitration is a matter of consent, the FAA cannot preempt a law that regulates conduct where there's no consent and no arbitration agreement. The court order answered this problem by creating a new substantive right of employers to force arbitration agreements on their employees as a condition of continued employment or for new employment for applicants. But there's no such right derived from the FAA. This was error. For instance, a 40-year employee could be terminated for refusing to sign an agreement or attempting to negotiate a different agreement. Even if that agreement is patently unfair, illegal, or unenforceable, the new right could allow employers to mask discriminatory intent behind the guise of a refusal to sign an agreement to waive rights and protections under the Labor Code and FEHA. But the statute that we have in front of us is not couched on some provision or some notion of unconscionability. You give as an example someone who might be forced to sign it, and that sounds like an unconscionability argument. That's not the argument here, and that's not really the way the statute works. It's a symptom of finding preemption under the subsection B of 432.6, so it's an example of what could happen. So I don't want to distract the judge or the court from the points that I'm making. An example of what could happen, but the statute speaks much more broadly than circumstances where there might be an unconscionability defense to entering into the contract. That's correct, and again, this is just an example, and unconscionability is its own generally applicable contract defense. If this were a straight unconscionability statute, I think it would not be preempted, but it's a broader statute than that, so you've got to defend it on broader grounds than that. Well, neither of the two key provisions prohibits parties from entering an agreement or interfering with the enforcement of an arbitration agreement. Looking to guidance to last year's well-reasoned opinion in Blair v. Renta Center by the Honorable Judge Fletcher. It's a very well-written opinion, if I don't say so myself, but not in the case of the Honorable Fletcher. Looking to Blair, you know that AB 51 does not diminish parties' freedom to select informal arbitration procedures, and the law will not deprive parties of the benefits of arbitration. In fact, again, subsection F specifically indicates that AB 51 cannot be used to undermine the enforceability of arbitration agreements citing to the FAA. I think that may have answered your question about unconscionability. Does California intend to enforce it to bring criminal penalties against employers who have required arbitration agreements as a condition of employment? It is not an unusual labor code provision. It falls within the ambit of Labor Code Section 433, which does provide for the imposition of a misdemeanor or up to $1,000 fine. So that's a yes, I take it. Well, it's conjecture at this point, but they could. It does fall within that provision. And so the criminalizing requiring certain agreements as arbitration agreements, and does it apply to all agreements? Or does it apply to an employer that requires certain agreements as a condition of employment or can't require any agreements as a condition of employment? It is impinging on when they impinge on a right form or procedure under FIHA or the Labor Code, then they cannot force that obligation. For instance, they cannot force you to sign an employee to sign a non-disclosure agreement that's broad, for instance, to cover even sexual harassment or a non-disparagement clause. But it wouldn't affect... So is that criminalized? So I just want to make sure I understand the difference between criminalizing requiring an agreement and saying that the agreement is enforceable. So is a non-disclosure agreement not enforceable, but not criminal to enter into or to require? Or is it criminal to require that sort of agreement? If it were enforced, AB 51 could criminalize a non-disclosure agreement that's forced on an employee as a condition of employment. If that answers your question. And what's the language? Which part of the... I'm just not sure I totally understand how AB 51 works. So show me where the non-disclosure agreement can't be required. It's a rights procedure under 432.6a. A person shall not, as a condition of employment, continued employment, or the receipt of employment-related benefits, require an applicant to waive any right, form, or procedure for a violation of any provision of FEHA or the Labor Code. You're right to discuss... Oh, I'm sorry. I apologize. Okay, go ahead. Please go ahead. Well, if you're waiving a right to... It would be waiving your ability to talk about a company in a bad way, or the sexual harassment... So if you're waiving any right, so you can't waive any right? I'm not sure I understand that. So it doesn't relate to a provision of the California Fair Employment and Housing Act? I don't have anything directly on point under the Act in front of me, Your Honor. But it would relate to the ability to bring a claim. So how does that apply? I don't understand how that applies to a non-disclosure agreement. So the intent behind the law, you know, it derived from the Me Too movement. This is a result of the Me Too movement. And it's had several iterations to make sure that employees weren't silenced beforehand if there was something that was happening at a company that pertained to sexual harassment. And you can bring charges under FEHA and the Labor Code for such harassment. But I don't have an example of the Labor Code provision right now in front of me. All right. So neither one of these provisions, A and B, the two key provisions, prohibits parties from entering arbitration agreements or interferes with their enforcement. And does it prohibit them from entering into a non-disclosure agreement? It does not. But they, as a policy, could not require a non-disclosure agreement as a condition of employment or non-disparagement clause, for instance. Or a COVID-19 liability waiver, which has come up quite recently, for instance. And other types of agreements that would close the door to the California Labor Commission and to the DFEH. Finally, AB 51 doesn't single out arbitration agreements for differential enforceability. It doesn't create contract offenses, and it applies broadly to the clauses that we've been discussing. It prevents employers from unilaterally opting out of California protections. So choosing not to participate by forcing all of their employees to waive rights, forms, and procedures under the Labor Code and FEHA. That was the purpose behind AB 51. And essentially, if you look at BLAIR, so we don't create new contract offenses. And we don't change the nature, the inherent nature of arbitration, such as in Preston v. Farrar, or a similar case like that. Or even Concepcion, where the fundamental nature of arbitration has changed. So under BLAIR, this statute should be constitutional. And the cases relied on by the district court and the plaintiffs address laws and rules that disparately affect the enforcement of arbitration agreements. Or again, they interfere with the inherent and fundamental attributes of arbitration. Because AB 51 does neither, it falls outside of the scope of FEHA preemption, and the court erred by applying it. With that, I'll reserve my time unless the court has additional questions. I think not at this time, so you've saved some time, and we'll hear from Mr. Pincus. Good afternoon, Your Honor, and may it please the court. There basically are three reasons that the state advances that this statute is not preempted by the FAA. And each of them are precluded by precedent. One is that it applies only to non-negotiable contracts, the take-it-or-leave-it offers that the offer of employment is conditioned on. The second is that it doesn't expressly target arbitration. And the third is that it doesn't bar the enforcement of arbitration contracts. It just makes it a crime to enter into them. And our submission is that settled FAA precedent precludes all of those distinctions, and therefore the statute, the district court, correctly held that the statute is preempted. Let me make sure I understand your challenge here. Is your challenge to this statute limited to the arbitration provisions, or is it broader than that? Our challenge is to the application of this statute to contracts that are covered by the FAA, and the district court's relief was limited to holding that the statute could not be applied to contracts that are protected by the FAA. So, for example, my friends— Let me make sure I understand your answer. You're saying that—if I understand you correctly, you're saying that to the extent that the statute prohibits the automatic requirement of arbitration, the statute has to be struck down even as to other provisions, such as nondisclosure, for example, provisions, even if the arbitration clause itself is not infirmed. No, Your Honor, we're not— Is that an unfair statement of your argument? I'm just trying to understand. I understand. Let me use the example that my friend used on the other side of a contract provision of an employer that said, this job offer is conditioned on a waiver of any employer liability for COVID-related illness. Our submission—we are not challenging the application of the statute to that kind of waiver. All right. Our contention is that the statute—that the preemption only applies if the statute is applied to a contract to an Arbitration Agreement Protection Act, and that was the limit of the district court's relief. The district court did not strike down the whole statute. She said the statute cannot lawfully be applied to non-negotiable offers of employment that include a non-negotiable arbitration agreement. As an example, under your argument, if I come into a covered place of employment as a punitive employee and offer myself up for employment, which employment is precluded only because I decline to submit myself to arbitration in signing that aspect of the contract? The contract—your challenge here would cover my situation. Yes, the employer in that situation couldn't be criminally prosecuted for offering his or her offer of employment on the applicant's agreement to the arbitration clause. So is your challenge then solely to the criminal aspect—to the criminal sanction of the statute? If that were to be struck down, does the remainder of the statute remain uninfirmed? No, because there are both criminal and civil sanctions. So our challenge is to both the criminal and civil sanctions that would apply in the situation that we've just been discussing. Well, let's talk about the civil aspect of it, then, not the criminal. Same situation. I submit myself for employment, but I am declined to be in solely because I don't want to have anything to do with arbitration. I want to reserve my rights, whatever they may be, to go into a court of law. Is the statute yet infirm in your eyes? Yes, and maybe I can explain why. Please do so. So California permits employers to condition job offers on the employee's agreement to numerous take-it-or-leave-it terms, such as pay amount, work hours and schedule, holidays and vacation days, and others. And because the state enforces those agreements, even though the offeree is not permitted to accept the job and refuse the employer's terms, Section 2 of the FAA bars California from applying a different rule to arbitration agreements, because Section 2 bars the state from treating arbitration agreements different from other contracts. So it is the disfavored treatment of arbitration agreements versus other elements, like the ones that I've just described, that triggers FAA preemption. Now, the state would say that notwithstanding that differential treatment, FAA preemption doesn't apply for two additional reasons. First, as my colleague said, this statute doesn't bar enforcement of the arbitration agreement. It just makes it a crime for the employer to offer the non-negotiable term. But the FAA does not permit states to make it a crime to enter into arbitration agreements. The Supreme Court in Concepcion said, and I'm quoting, our cases place it beyond dispute that the FAA was designed to promote arbitration. And the court said the FAA therefore preempts state laws that, I'm quoting again, stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. And it's hard to imagine a greater obstacle to the promotion of arbitration than imposing criminal and civil or criminal or civil sanctions for entering into arbitration agreements imposed for entering into any other types of contracts. And the First Circuit reached just that conclusion in the Connolly case that we discussed. There, a state law made it a regulatory violation if broker-dealers required customers to sign arbitration agreements. It did not invalidate the arbitration agreements. From your perspective, is our panel free to strike down the criminal provisions insofar as they relate to arbitration, but preserve the rest of the statute intact? No, but I think leaving the civil provisions intact, as the district court concluded, would still disfavor arbitration compared to the way all these other contracts are treated. And in fact, in Connolly, it was a civil sanction. It was a regulatory sanction on broker-dealers under state law. And the court there held that even if the contracts would be enforceable, imposing that sanction for entering into them violated the FAA and was preempted by the FAA. They said the power to suspend a license is the economic equivalent of the death penalty and an obstacle of greater proportions, even than the chance that in a given dispute an arbitration agreement might be declared void. And here, the imposition of criminal or civil sanctions that don't apply to other forms of any other kind of contract is exactly the kind of disparate treatment that the FAA prohibits. And the Supreme Court in the Kindred case, which we discussed in our brief, held that Section 2 applies to contract formation, the Section 2 anti-discrimination principle. And here, obviously, imposing either criminal or civil sanctions for forming arbitration agreements that don't apply to the other ordinary elements of an employment agreement that I've described is just the kind of discrimination that the FAA prohibits. Now, I understand that your client doesn't really care about any provision other than any application, other than the application to arbitration agreements. Yes, Your Honor. But it seems to me as I read the statute, it's very hard to sever that from the statute as a whole. I mean, it doesn't have a clause that says, okay, this is arbitration and another clause that says this is something else. Does the whole statute have to fall? I don't think so. I think the court properly just said this law can't lawfully be applied to arbitration agreements protected by the FAA. I don't think that anything has to be severed. It's just a limitation on the scope of the statute that the district court found. So I don't think that the whole statute has to be invalidated in order to reach that conclusion. The second basis on which the state tries to distinguish this case is the argument, sort of following up on your point, on your question, Judge Fletcher, that this statute in terms doesn't single out arbitration. But it includes other types of waivers, the right form or procedure for a violation language that my colleague read. And the argument there is therefore there isn't a discrimination against arbitration. But the Supreme Court has made clear that what Section 2, the Section 2 Savings Clause of the FAA, which preserves laws that apply, state laws that apply to the revocation of any contract is the language, means that the state law rule has to be generally applicable. Arbitration agreements, if the state is going to create two categories, one category of favored contracts to which a rule doesn't apply and a category of disfavored contracts to which a rule does apply, it can't put arbitration agreements into that disfavored category. That was true in the Concepcion case, the Discover Bank rule that was at issue in that case that invalidated class waivers. As the Supreme Court noted, it applied both to waivers of class procedures in litigation and in arbitration, but the court found it preempted. And it said there that what were preempted were laws that derived their meaning from the fact that an agreement to arbitrate is at issue. And that's what is true here. This law specifically generally calls out rights to forums or procedures, but the last clause of the statute specifically prohibits the waiver of any right to file or pursue a civil action or a complaint in agencies or courts, making clear that it's encompassing that key element of arbitration, which is the waiver of the right to go to court. What is the limiting principle involved here on arbitration, given that almost all consumer contracts today could require arbitration from buying a stick of bubblegum to the biggest computer conceivably manufactured and sold? All can require, all contain warranty and contract provisions providing for arbitration. Now, you're telling, you're arguing that we should allow that in the Ninth Circuit. What's the limiting principle? Are courts just by fiat written out of existence in terms of employment and consumer contracts? I don't think so, Your Honor. There still are a lot of disputes that go to court. And I think the limiting. Yes, because only because the statutes of the type that you're talking about, you're you're you're asking us to strike him down. Getting back to my my situation, I show up to work in the Ninth Circuit. I present myself for employment. I meet all criteria. The employer is perfectly willing to hire me. But for the fact that I don't like arbitration, maybe I've had a bad experience and I don't want anything to do with it. You say the employer can force me to sign that contract or I get no job. Just as the employer can say the pay levels are not negotiable, either except the pay levels I've offered or you don't have a job. What are you talking about pay level? I'm not asking about pay level. I'm asking about an arbitration clause. I've said all other conditions we've come to terms on. But that's the critical question, Your Honor, respectfully. And the district court made made this point in her opinion. If California said. If I can interrupt for just a minute, pay level is really very different from I get to violate California law, engage in sexual harassment. I get to engage in all kinds of things that are a violation of California law that I could not independently do. I could pay you more or less. California law permits that. But your position is the employer can say I can do pretty much anything I want to you. The violation of California law and prevent you from going to court. You have to go to arbitration. Well, I think, Your Honor, that the employer can't say I can violate California law. What the what arbitration what the FAA permits is for the disputes about whether the law has been violated to be resolved in out in in arbitration as opposed to court. And that's what the FAA protects. I think you said the same thing as I said in different words. I'll say it slightly differently that you may might not want to reformulate. Employer, in your view, gets to say, if I pay you more, if I pay you less, that's OK. If I violate the California law, for example, with respect to sex discrimination, you do not get to go to court. You have to go to arbitration. Employer gets to say that. The employer gets to make that a condition of employment. Yes, Your Honor. Just like the employer can say you get two weeks of vacation and that's a condition of employment. And if you want more vacation, you can go somewhere else. Please let me interrupt you again, getting two weeks of vacation or three weeks of vacation, getting paid fifteen dollars an hour, getting paid twenty dollars an hour. That's on a range of benign and perfectly permissible conditions. Your point gets you much further than that. And that is to say that the employer gets to engage in an act that may be well considered may well be considered to be a violation of California law. And if that happens or if there's a plausible allegation that has happened, the employer gets to insist that there's no access to court only arbitration. And that's because what Congress said in the FAA, Your Honor, is that arbitration agreements have to be put on the same, treated the same as other agreements. So you're basically arguing that Congress created a situation that is better than pre-Lochner. You are saying that all of the all of the ills of the pre-Lochner era can now be brought back into the employment situation as long as the employer and the employee agree that any violation thereof is going to be subject to arbitration. Well, I think the assumption is that arbitration isn't a valid dispute resolution system. And the assumption, the conclusion that Congress made in Section two is is that it is. And just returning to the question of whether because this certainly if this if this provision just singled out arbitration agreements and said you can't offer it's a crime to offer arbitration agreements. I think it would be pretty clear beyond any possible doubt that singling out arbitration in that manner violates the FAA. Excuse me. Couldn't California criminalize anyone who enters into an arbitration agreement? In other words, it's sort of pre-formation. So there's no actual agreement. We just California could just enact the law saying no arbitration agreements from now on are criminal. If you enter into them, they're enforceable, but otherwise they're not allowed. Couldn't California do that? I think that would violate the FAA because that would fail the obstacle preemption test because it would be quite an obstacle to arbitration agreements to say arbitration entering into an arbitration agreement is a crime. And I think that's exactly what this statute does. The only difference is it includes a slightly broader range of waivers other than the waiver of the right to go to court. But in the Supreme Court Southland. Counsel, it strikes me that that's an unfair argument. The statute does no such thing. The statute does not criminalize arbitration agreements. The statute creates the option for both the employer and the employee to use an arbitration agreement. And if both parties agree to it, there's nothing whatsoever criminal about it. And I don't think your answer to Judge Akita's question is correct in the assumption that it makes. Well, I apologize, Your Honor. It treats by prohibiting non-negotiable arbitration agreements. When California permits non-negotiable provisions with respect to many other elements of the employment relationship, it distinguishes. It discriminates against arbitration in a way that is prohibited by the FAA. That's exactly what the Fourth Circuit held in the Saturn case, which involved a very similar statute to the one here. That required in motor vehicle dealer agreements a prohibition on wagers of on waivers of procedures, forums and remedies. And that was interpreted as barring only non-negotiable provisions. And the Saturn court held, first of all, the fact that it was non-negotiable did not take it outside the ambit of the FAA because Virginia allowed other forms of contract provisions to be non-negotiable. And that was discriminatory. And the Fourth Circuit said, as the Supreme Court did in the Southland case with a similar statute, that the fact that other contract, other forms of waivers are included within the waiver, didn't take it out of the protection of the FAA because arbitration was still included in the disfavored class. Thank you. Okay. You're on the button. Thank you, Your Honor. Thank you very much. Mr. Tegman, you've saved some time. Thank you. If you'll indulge me, I'd like to first address the Connolly and Saturn decisions. In both cases, let's start with Connolly. I believe it was Massachusetts specifically called arbitration out and said that you cannot have a non-negotiable agreement with your securities broker. You also have to include a discussion of arbitration. I believe it was, it wasn't redlined and underlined and in all caps like it was in the Casa Rota case. But they had to require, there was a full disclosure of the legal effect of the pre-dispute arbitration contract. It was kind of like a Miranda right. So not only did this create a new contract defense, which we don't have here, which would definitely violate, I could see the preemption being applied in that case. It's creating a contract defense and specifically discouraging people from entering into arbitration agreements, specifically arbitration agreements. Similarly, Saturn created a contract defense. In that case, I believe it was Saturn who presented its dealer manufacturer agreement to the DMV commissioner of Virginia. And he indicated that you couldn't have this non-negotiable arbitration agreement under the laws of Virginia. So I'd sort of like to hear your answer to the question I raised to opposing counsel. If California enacted a non-permitted to enter into an arbitration agreement, and you would be exposed to civil or criminal penalties if you did so, even though the agreement would subsequently be enforceable, could California enact that sort of statute? I don't believe that it could. I need to know more about the statute. Why is that? Because the contract hasn't been formed and it's not a contract defense and the contract is perfectly enforceable. It's just preventing individuals from entering into such a disfavored contract in the first place. Why wouldn't that be okay? Because it would specifically call out arbitration agreements. Well, we won't call it arbitration agreements. We'll say a contract where you waive your right to go to court, making less work for Judge Lucero. I think this case is different. Just tell me why wouldn't that be permissible, that sort of statute? Because it would specifically discourage people from entering into arbitration agreements, and I believe it would interfere with some of the fundamental attributes of arbitration. So is there sort of a continuum? Because your opposing counsel says not being able to enter into a non-negotiable arbitration agreement discourages arbitration. And I'm saying, well, what if you just say you can't enter into anything that allows you to waive your right to go to court? Maybe it's more discouraging. So are you saying that if it's very discouraging, you can't do it, but if it's only a little discouraging, it's okay? One precludes the ability of anyone to enter into an arbitration agreement, and here, folks can enter into an arbitration agreement. When you go, to distinguish from a consumer setting, when you go into an employment situation, you bring rights with you. You bring statutory rights with you, and that's what you're waiving here. So that is a greater consideration, and that wasn't a consideration in Conley or in Statter. And in Kindred, again, you create a barrier to the formation of contract, which means you couldn't enforce the arbitration clause. We did not have that circumstance here, and there, it was a broader application, but the Supreme Court of Kentucky created this rule for two arbitration agreements, essentially, and they were not allowed to do that because it prevented the enforceability of that agreement. We did not have that circumstance here, and people can, in fact, enter into arbitration agreements. The fact that there are, in the labor code provisions, four enforcements should not be of any issue here, but to the extent they would interfere with a fundamental attribute of arbitration, which I don't think it does, then there is a severability clause that allows, it's under Section I of the, it's 432.6I. It allows the court to sever the application in whatever circumstance that they see fit, and that's what Judge Mueller did below. She only applied to this narrow circumstance, allowing all of the 1.25 million or 1.15 million transportation workers to fall outside. They fall within Subsection I of the FAA. They're still, this is applicable to them. It's applicable to, sorry, go ahead, Judge Fletcher. I understand your argument, and one of the things that seems to me maybe is that insofar as the employer is requiring arbitration for, well, I didn't pay you what I promised to pay you. I didn't give you the vacation I promised to give you. That sounds as though that right comes out of the voluntary agreement between the two of them, and that I think certainly, I think the employer can require arbitration for that, but the statute goes much further, or the position of the other side goes much further than that. They want to preserve arbitration for rights that exist independently of any right conferred under the contract. That is to say, they want to be able to require arbitration for claims that there was a violation of the California rule against sexual harassment, against all kinds of extra contract requirements that come in by virtue of statute. Are you making that distinction in terms of what can be required and what cannot? It does. That is a very good way of putting it, Your Honor. There are contractual rights. Let's talk about pay. If you get paid a certain amount, and you agree to that, and you bring a violation of that contract, that's a cause of action. Maybe that could be arbitrated, but what about a violation of minimum wage? If there's a violation of minimum wage laws, at that point, you're interfering with the statutory and federal law. I understand. Once we've pared your argument down to that one, I still am troubled by a Supreme Court case law that's not quite directly on point, but it seems to push pretty strongly in the direction of you cannot disfavor arbitration as a means of arising disputes. I'm not sure that the Supreme Court differentiates between types of disputes in the way that I've just posited. If you're referring to the Kindred case, again, in that circumstance, the Kentucky Supreme Court created a barrier to the enforcement. It's formation, but ultimately, if you don't have a well-formed or the ability to enter into an arbitration agreement, and you're fighting the arbitration agreement, it makes it unenforceable. We don't have anything like that here. I'm referring back to the Blair decision when you're talking about, are you creating new contract defenses, and are you interfering with an inherent attribute of arbitration, such as causing delay by having to exhaust administrative remedies, or having to change arbitration into a class arbitration, which creates complexity that you were hoping to avoid? We've just taken you over time. I apologize. Can I sum up for a moment? Yes, please do so. Okay. So cases relied on by the district court address laws and rules that disparately affect the enforcement of arbitration agreements, or two, they interfere with the inherent and fundamental attributes of arbitration. AB 51 does neither. It does not interfere with the formation or enforceability of arbitration agreements, and it does not change the arbitration procedure to undermine its primary benefits. Finally, it cannot be that you can reach into situations covered by Labor Code section 432.6b, where there is no consent and there is no agreement. In doing so, the district court erroneously created a substantive right not found in the FAA, the right of employers to force arbitration agreements on employees as a condition of employment, so that they can opt out of state protections and procedures. AB 51 does not conflict with the FAA or act as an obstacle to the accomplishment of the inherent attributes of arbitration. Thank you. Okay. Thank both sides for your agreement. Commerce versus Becerra submitted for decision. Thank you very much, both sides.
judges: Lucero, W. Fletcher, Ikuta